IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| URIEL N.E.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 1:21-cv-01298-JES-JEH |

### Report and Recommendation

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 17). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

### I

Uriel N.E. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on February 25, 2019, alleging disability beginning on June 29, 2012. His DIB and SSI claims were denied initially on July 23, 2019 and upon reconsideration on March 16, 2020. After a request for hearing before an administrative law judge, a hearing was held on November 13, 2020 before the Honorable John M. Wood (ALJ). At the hearing, Uriel was represented by an attorney, and Uriel and a vocational expert testified. Following the hearing,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 5) on the docket.

Uriel's claims were denied on February 3, 2021. His request for review by the Appeals Council was denied on August 23, 2021, making the ALJ's Decision the final decision of the Commissioner. Uriel timely filed the instant civil action seeking review of the ALJ's Decision on October 21, 2021.

## II

Uriel challenges the ALJ's Decision for the following reasons: 1) the ALJ failed to properly evaluate the medical opinions and failed to properly determine Uriel's residual functional capacity; and 2) the ALJ failed to properly evaluate Uriel's subjective statements.

## III

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.[2] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

---

[2] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Uriel claims error on the ALJ's part at Step Four.

## A

The ALJ first determined that Uriel met the insured status requirements of the Social Security Act through December 31, 2013. AR 38; *see Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (emphasizing that the claimant had to establish actual disability during the insured period). At Step One, the ALJ determined Uriel had not engaged in substantial gainful activity since June 29, 2012, the alleged onset date. AR 38. At Step Two, the ALJ determined Uriel had the following severe

3

combination of impairments: spine disorder; chronic obstructive pulmonary disease; and a degenerative left knee. AR 39. At Step Three, the ALJ determined Uriel did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 40. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is unable to climb ladders, ropes, or scaffolds; he must avoid environmental hazards such as work at unprotected heights or near dangerous machinery; he is limited to occasional stooping, crouching, crawling, kneeling, balancing, and climbing ramps or stairs; he is able to reach overhead only occasionally and is able to perform all other bilateral manipulative functions frequently; he must avoid concentrated exposure to extreme temperatures, pulmonary irritants, wetness, humidity, and vibrations; he needs an option to alternate periodically equally if desired between a standing/walking position and a sitting position and vice versa, but it [sic] not times more than at 30 minute interval [sic]; due to chronic physical pain, he is limited to understanding only simple and routine instructions, to making simple work-related decisions, and to performing simple and routine tasks on a sustained basis with little or no change in work setting or duties.

AR 40-41. He found Uriel was unable to perform any past relevant work. AR 45. At Step Five, the ALJ determined that considering Uriel's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Uriel could perform. *Id*. Thus, the ALJ concluded Uriel had not been under a disability from June 29, 2012 through the date of the Decision.[3] AR 47.

---

[3] The ALJ articulated in his Decision that, "The period of time under consideration encompasses a long period of time with the initial timeframe to be considered starting on July 29, 2012, through December 31, 2013. The second timeframe under consideration starts as of the application date for [SSI], February 25, 2019, through the date of this decision. The date last insured, December 31, 2013, is remote and the claimant's functioning has fluctuated at certain times owing to treatment of his impairments . . . A single [RFC] assessment has been adapted for the entire period at issue . . . this has given the claimant every benefit of the doubt." AR 42.

4

**B**

Uriel first argues that the ALJ's minimal articulation of how he considered treating primary care family physician Anne E. Hinz, M.D.'s opinion evidence was flawed where, contrary to the ALJ's conclusion, Dr. Hinz cited to medical evidence supporting her opinions and where objective, unchallenged record evidence of spinal abnormalities was consistent with Dr. Hinz's opinions. The Commissioner argues the ALJ's evaluation of Dr. Hinz's opinion comported with the governing regulation where the ALJ stated reasons for why Dr. Hinz's opinion was not well supported and where a plain reading of the ALJ's Decision shows he found Dr. Hinz's opinion inconsistent with the record.

In his Decision, the ALJ considered that Dr. Hinz completed a medical source statement dated September 4, 2018 "supporting the claimant's allegation that he had symptoms of disabling impairments." AR 43, 44. The ALJ highlighted that Dr. Hinz claimed Uriel had disabling limitations in September 2018 dating back to 2012 and the doctor noted that Uriel treated his back pain with injections and physical therapy prior to his lumbar fusion surgery on March 15, 2016. *Id*. The ALJ ultimately concluded as to Dr. Hinz's September 2018 opinion:

> It is clear that the form used by Dr. Hinz was filled out largely based on the subjective complaints of the claimant at an office visit in which the claimant brought the form to Dr. Hinz . . . This is accentuated by the fact that Dr. Hinz started treating the claimant in 2016, but yet was willing to put on the form that the claimant's functional limitations dated back to 2012, despite the absence of evidence showing that Dr. Hinz had reviewed medical evidence dating to 2012. . . . This inconsistency calls into question the accuracy of the assessment of Dr. Hinz, and her opinion is not persuasive.

AR 44.

The Court agrees with Uriel that the ALJ failed to properly consider and explain his application of the factors of supportability and consistency to Dr.

Hinz's September 2018 opinion. Pursuant to 20 C.F.R. § 404.1520c(a) and 20 C.F.R. § 416.920c(a), an ALJ is required to consider the persuasiveness of medical opinions using several factors, though the most important factors are supportability and consistency. *See also* 20 C.F.R. § 404.1520c(b)(2) and 20 C.F.R. § 416.920c(b)(2) (providing the factors of supportability and consistency "*are the most important factors* we consider when we determine how persuasive we find a medical source's medical opinions . . . to be") (emphasis added); 20 C.F.R. § 404.1520c(c)(1) (providing that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be"); 20 C.F.R. § 404.1520c(c)(2) (providing the factor of consistency will be considered when considering medical opinions such that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

      Nowhere did the ALJ actually refer to how well supported, or not, Dr. Hinz's opinion was nor how consistent, or not, her opinion was; the Decision is completely silent on those two factors. The Commissioner argues that the ALJ reasonably found Dr. Hinz's opinion was not well-supported because 1) she speculated that Uriel's limitations dated back to 2012 even though she did not start treating him until 2016, and 2) because it appeared to be based on Uriel's subjective complaints. Even assuming the ALJ was attempting to state he found Dr. Hinz's opinion not well supported for those reasons, neither of those reasons amount to substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

With regard to the first, and as the Commissioner emphasizes, the ALJ did state that there was an "absence of evidence showing that Dr. Hinz had reviewed medical evidence dating to 2012." AR 43, 44. However, that observation (and attendant reason to dismiss the opinion) appears erroneous on the face of the record evidence. Dr. Hinz's September 4, 2018 Multiple Impairment Questionnaire stated explicitly to "See attached imaging reports" in response to the prompt "Clinical and laboratory findings that support your diagnoses." AR 1580. Later, the Questionnaire stated explicitly in response to the prompt "List other treatment," "Lumbar fusion 3/15/16," "Physical therapy 2012-16," and "Lumbar injections 2012-16." AR 1581. In other words, the Questionnaire indicates Dr. Hinz in fact reviewed Uriel's medical evidence dating back to 2012. Moreover, as Uriel argues in his Reply, there is nothing improper about treating medical sources providing retrospective opinions on a patient's functioning during an earlier period when there is evidence related to that period at issue. Surely, Dr. Hinz, who had been treating Uriel for two years at the time she ultimately rendered an opinion, called upon her knowledge of his medical history (as learned from him as well as medical records) and her own history of treating him to render that opinion.

With regard to the ALJ's second reason to reject Dr. Hinz's opinion, the record evidence similarly contradicts it. The day Uriel brought the form to Dr. Hinz, under "Objective," Dr. Hinz wrote, "General Alert, appears uncomfortable, shifts from sitting to standing, leaning with right side against counter." AR 1615. Again, Dr. Hinz rendered her opinion after two years of treating Uriel, which included observing and examining him in addition to listening to his subjective complaints, and she specifically cited to imaging reports in support of the limitations to which she opined. An ALJ may not ignore contrary evidence, but instead must confront the evidence that does not support his conclusion and

explain why that evidence was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ, rather conveniently, ignored parts of Dr. Hinz's opinion that undermined his reasoning. Additionally, the Court agrees with Uriel that nothing suggests that Dr. Hinz blindly accepted his complaints given the extensive clinical and objective abnormalities (and needless to say, the fact that he underwent surgery to treat his symptoms) in the record.

The Commissioner's reliance upon Uriel's internal medicine consultative examination to bolster the ALJ's supportability finding is misplaced.[4] First, that consultative examination occurred on December 21, 2019, not in October 2018 (as both the ALJ and Commissioner mis-state), and so there was not the glaring discrepancy in just one month's time between Dr. Hinz's opinion of Uriel's functional limitations and the results of Uriel's consultative examination. Second, the ALJ did not articulate that the consultative examination results factored whatsoever into his conclusion that the form Dr. Hinz filled out was largely based on Uriel's subjective complaints at his office visit that day. *See, e.g., Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (stating a court, in reviewing an ALJ's RFC assessment, "must confine itself to the reasons supplied by the ALJ"). Finally, the results of one examination in a record spanning 2012 through 2020 is a mere scintilla of evidence. *See Biestek*, 139 S. Ct. at 1154 (substantial evidence is "*more* than a mere scintilla") (emphasis added).

To the extent the Commissioner similarly relies upon Uriel's December 2019 internal medicine consultative examination in arguing that a plain reading of the ALJ's Decision shows he found Dr. Hinz's opinion inconsistent with the record,

---

[4] ALJ considered the internal medicine consultative examiner's December 2019 examination of Uriel which revealed Uriel: was able to perform all orthopedic maneuvers other than walking on his toes and walking on his heels; was capable of walking greater than 50 feet without support and with a normal gait; had full upper and lower extremity strength and full ability to use his hands for gripping; had no evidence of reflex abnormalities or loss of sensation; and had no limitation of motion of any other joint. AR 43. The examination did not reveal muscle atrophy or motor weakness. *Id*.

that reliance is again misplaced. Again, the internal consultative examination was *not* taken just one month after Dr. Hinz rendered her opinion. The Commissioner faults Uriel for "citing a laundry list of evidence" which, the Commissioner says, he has invited the Court to re-weigh. Dft's MSA (Doc. 15-1 at pg. 3). Not so. Instead, Uriel cited to an abundance of evidence to illustrate his contention that the ALJ did not sufficiently confront the record evidence for purposes of considering the persuasiveness of Dr. Hinz's opinion. Rather than defeat Uriel's argument, the Commissioner's reliance on a single examination – that happened to show normal results – in an extensive record showing ongoing spinal issues, ongoing treatment for those issues, and ongoing complaints about those issues underscores Uriel's argument. The ALJ quite obviously emphasized normal findings; for example, the ALJ referred to just one spinal imaging result in June 2018 which showed "very good fusion at L4-5 with the pedicle screw in excellent position." AR 42 (citing AR 1633). There were several other imaging reports in the record, and the ALJ's silence as to those as well as his emphasis upon normal and absent findings suggests he substituted his own judgment for that of a physician's. *See Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016) ("There is always a danger when lawyers and judges attempt to interpret medical reports . . . .").

Furthermore, while the ALJ here did not need to "mention every snippet of evidence in the record," the ALJ was required to connect the evidence to his conclusion and not ignore entire lines of contrary evidence. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). The Court again notes that nowhere in the ALJ's analysis of Dr. Hinz's opinion did the ALJ rely on the December 2019 internal consultative examination. Rather, it is the Commissioner who relies on that examination in an after-the-fact attempt to save the ALJ's analysis. It *was* the ALJ, however, who entirely failed to expressly consider the consistency of Dr. Hinz's opinion with the evidence from other medical sources and nonmedical sources in

the claim and who largely discussed only the objective medical evidence unsupportive of Uriel's claims. The Court recommends remand.

C

Because the Court has now determined that the ALJ committed reversible error in his consideration of Dr. Hinz's opinion which necessarily undermines the ALJ's RFC assessment as a whole, the Court need not address Uriel's remaining arguments.

IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on January 23, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE